IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Center for Science in the Public Interest,<br><br>    Plaintiff,<br>v.<br><br>**Burger King Corporation**,<br>5505 Blue Lagoon Drive<br>Miami, FL 33126<br><br>    Defendant. | Civil Action No. 07-CV-1092 (RJL)<br><br>Judge Richard J. Leon |

### MOTION TO REMAND BY PLAINTIFF
### CENTER FOR SCIENCE IN THE PUBLIC INTEREST

Pursuant to 28 U.S.C. 1447(c), Plaintiff moves this Court for remand of the instant proceeding to the Superior Court of the District of Columbia. Prior to filing, in accordance with LCVR7(m), counsel for Plaintiff conferred with Defendant's counsel by phone and was advised they would not consent to the granting of instant motion. In support of this motion, Plaintiff provides the attached Statement of Points of Authorities in Support of the Center for Science in the Public Interest's Motion to Remand.

Dated: July 18, 2007

OF COUNSEL:

**Center for Science in the Public Interest**
Stephen Gardner, Director of Litigation
Kate Campbell, Staff Attorney
5646 Milton St., Ste. 211
Dallas, Texas 75206
Telephone: 214-827-2774
Facsimile: 214-827-2787

Respectfully submitted,

_____
Steven N. Berk
**Chavez & Gertler LLP**
1225 Fifteenth Street NW
Washington, D.C. 20005
Telephone: 202-232-7550
Facsimile: 202-232-7556

OF COUNSEL:

**Chavez & Gertler LLP**
Mark A. Chavez
Nance F. Becker
Daniel Swerdlin
42 Miller Avenue
Mill Valley, CA 94941
Telephone: 415-381-5599
Facsimile:  415-381-5572

*Attorneys for*
*Center for Science in the Public Interest*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **Center for Science in the Public Interest**, <br><br> Plaintiff, <br> v. <br><br> **Burger King Corporation**, <br> 5505 Blue Lagoon Drive <br> Miami, FL 33126 <br><br> Defendant. | Civil Action No. 07-CV-1092 (RJL) <br><br> Judge Richard J. Leon |

### STATEMENT OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION TO REMAND

Plaintiff The Center for Science in the Public Interest (CSPI) moves to remand this case to the Superior Court of the District of Columbia, pursuant to 28 U.S.C. 1447(c).

### INTRODUCTION

CSPI was founded in 1971 as a non-profit watchdog over the public's health and welfare. Since 1971, CSPI has been among the nation's foremost advocates for nutrition, food safety and general public health. CSPI spearheaded efforts, *inter alia*, to: require nutritional labeling on packaged foods, define the term "organic," place warnings on alcoholic beverages and ban the use of trans fat in New York City restaurants. For its work, CSPI has received the highest organizational honor possible from the Food and Drug Administration –the Commissioner's Special Citation. CSPI circulates an award-winning newsletter, *Nutrition Action Healthletter*, to nearly 900,000 subscribers in the United States and Canada. Approximately 3,200 of Plaintiff's members reside in the District of Columbia.

CSPI filed this action against Burger King Corporation ("Burger King") on May 16, 2007 in the Superior Court of the District of Columbia. Plaintiff filed this case as a representative

- 1 -

action on behalf of D.C. consumers; as with most of its litigation and advocacy efforts, plaintiff strives to protect the public from the unwitting consumption of dangerous substances. Specifically, CSPI alleges that the presence of trans fat in Burger King's food, and the inadequate disclosure thereof, violate D.C. Consumer Protection Procedures Act (DCCPPA), D.C. Code § 28-3904(f).[1]

Trans fat is particularly harmful given its undetectable nature and propensity to spike bad (LDL) cholesterol. Specifically, scientific research for several years has demonstrated that trans fat is more harmful than any other type of fat.[2] Consequently, every Top 10 restaurant chain besides Burger King (McDonald's, Starbucks, Pizza Hut, Kentucky Fried Chicken, Subway, Applebee's Neighborhood Grill & Bar, Wendy's, Taco Bell and Domino's Pizza) meaningfully pursued much healthier, non-hydrogenated trans fat alternatives prior to the initiation of this litigation.

Burger King, however, continues to maintain notorious levels of trans fat in its food. For example, a single large serving of Defendant's hash browns yields more than 600% of daily recommended trans fat allowance.[3] After the commencement of this litigation, less than two weeks ago, Burger King announced that it will attempt to phase trans fat out of undefined "core

---

[1]   CSPI also alleges a count for breach of implied warranty, but relief under that count is under the DCCPPA as well.

[2]   For example, the Harvard School of Public Health estimates that the elimination of trans fat could prevent between 30,000 and 100,000 deaths in the U.S. annually. More recent studies from Harvard found that the near-elimination of industrially produced trans fat could avert more than 200,000 deaths per year in the United States alone. Plaintiff's Complaint at ¶21

[3] Similarly disturbing statistics apply to such products as french fries, onion rings and sausage/egg/cheese biscuits. These exemplars contain more than three times the maximum daily allowance of trans fat. Plaintiff's Complaint at ¶25

products" over some uncertain amount of time.[4] Burger King still provides no warning as to the dangers of trans fat or the amount of trans fat in its products relative to the recommended daily allowance. While Burger King appears to admit to the number of grams of trans fat in each product, it obscures this information by placing it in remote locations (e.g. a small poster in a far corner of the area behind the counter) and surrounding it with a slew of statistics that offer no context or explanation.

Plaintiff requests no monetary damages in connection with Defendant's misconduct. Rather, CSPI seeks relief which would require Burger King's mindfulness of public welfare and pursuit of the same health conscious course as its competitors. In other words, Plaintiff seeks to enjoin Burger King from preparing its food with trans fat. In the alternative, Plaintiff requests injunctive relief which requires Defendant to reasonably display adequate consumer warnings regarding the dangers of trans fat and the presence of trans fat in Burger King products.

Burger King recently removed this case to this Court. CSPI currently moves to remand this action on two grounds. First, the Court does not hold subject matter jurisdiction over a representative action. Second, Defendant fails to shoulder its burden of proof as to the minimum jurisdictional amount. Accordingly, Plaintiff respectfully requests that this Court remand this action to state court, where it may be fairly adjudicated.

## ARGUMENT

**I.     The Court should remand this case for lack of subject matter jurisdiction.**

When a plaintiff moves to remand, the defendant bears the burden of proof with respect to federal jurisdiction. *Julien v. CCA of Tennessee, Inc.*, 268 F.Supp.2d 19, 21 (D.D.C. 2003);

---

[4] Press Release, Burger King®, Burger King Corp. Announces Nationwide Rollout of Trans Fat Free Oil, *at* http://www.bk.com/companyinfo/newsreleases.aspx (July 6, 2007).

citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). *See also, e.g., National Organization for Women v. Mutual of Omaha Ins. Co.*, 612 F.Supp. 100, 102 (D.D.C. 1985); *Kopff v. World Research Group, LLC,* 298 F.Supp.2d 50, 53-54 (D.D.C. 2003). 28 U.S.C.S. §1447(c) commands, "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." Here, Defendant cannot demonstrate that Plaintiff's claims confer traditional Article III standing. This case is thus more appropriately heard in Superior Court of the District of Columbia.

In step with §1447(c), the District of Columbia Circuit Court found, "When it appears that a district court lacks subject matter jurisdiction over a case that has been removed from a state court, the district court **must** remand the case." *Republic of Venezuela v. Philip Morris, Inc,* 287 F.3d 192, 196 (2002) (emphasis added). It is established law in this District that representational plaintiff standing does not establish Article III standing, because there is no injury in fact. *See, e.g. Randolph*, 2007 U.S. Dist. LEXIS 11523 at **25-29 (D.D.C. 2007); *Williams v. Purdue Pharma Co.*, 297 F.Supp.2d 171, 177 (D.D.C. 2003).

Here, CSPI suffered no traditional injury in fact under the Article III. Rather, as an organization concerned for the welfare of its members, CSPI pursues this DCCPPA action as a representative plaintiff who neither suffered a heart attack nor experienced elevated LDL cholesterol as a result of Defendant's practice. In that sense, this case resembles *Randolph v. ING*. In *Randolph*, seven current or retired District of Columbia employees sued ING Life Insurance & Annuity Company for losing a laptop which contained private personal information. Though the ING plaintiffs presented no evidence of actual harm or injury (i.e. identity theft), the Court refused to dismiss the cases and remanded the action to its point of origin, namely the D.C. Superior Court. 2007 U.S. Dist. LEXIS 11523 at **25-29 (D.D.C. 2007); *citing Republic of Venezuela*, 287 F.3d at 196.

The approach in *Randolph* and *Republic of Venezuela* applies to the instant litigation. Defendant does not demonstrate that Plaintiff's representational standing involves an Article III injury, and thus the Court may not assume subject matter jurisdiction over the proceedings.[5] Other courts adopt this approach with respect to representational standing. *See, e.g., Mortera v. North America Mortg. Co.*, 172 F.Supp.2d 1240, 1244 (N.D.Cal. 2001) (representational standing under the Unfair Competition Law compels adjudication in state court due to a lack of subject matter jurisdiction under Article III).

Under the law of this District, this Circuit and §1447(c), the Court's analysis must end there. All further adjudication is properly determined in Superior Court.

## II. Burger King fails to establish the minimum amount in controversy necessary for federal jurisdiction.

"Federal courts are courts of limited jurisdiction and therefore the law presumes that 'a cause lies outside of [the court's] limited jurisdiction.'" *Julien*, 268 F.Supp.2d at 21; *quoting Kokkonen*, 511 U.S. at 377. Diversity jurisdiction exists when the action is between parties of diverse citizenship and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a). Moreover, "courts must strictly construe removal statutes." *Julien*, 268 F.Supp.2d at 21; *citing Williams v. Howard Univ.*, 984 F.Supp. 27, 29 (D.D.C. 1997). *See, e.g. Kopff v. World Research Group, LLC,* 298 F.Supp.2d 50, 54 (D.D.C. 2003) (citing *Shamrock Oil & Gas Corp. v. Sheets,* 313 U.S. 100, 100-07 (1941). Again, Defendant bears the burden of proving federal jurisdiction. *Julien,* F.Supp.2d at 21; *citing Kokkonen,* 511 U.S. at 377. *See also, e.g. National Organization for Women*, 612 F.Supp. at 102; *Kopff,* 298 F.Supp.2d at 53-54 (D.D.C. 2003).

---

[5] This District does not acknowledge the futility exception, whereby Defendant could claim that the futility of a federal claim bars the possibility of remand. *Randolph v. ING Life Ins. and Annuity Co.*, 2007 U.S. Dist. LEXIS 11523 at **25-29 (D.D.C. 2007); *citing Republic of Venezuela*, 287 F.3d at 196. (emphasis added).

Burger King, as the removing party, must establish the minimum amount in controversy necessary for federal jurisdiction. *Id.* Burger King relies solely on the Declaration of Jonathan Muhtar, its Director of Product Marketing, in an attempt to carry this burden. Muhtar's declaration proves insufficient and unreliable. Defendant therefore fails to satisfy the requirements of §1332(a).

As a primary matter, Muhtar's declaration does not attest to the cost of adequate consumer warnings in Burger King's D.C. restaurants. Plaintiff contends that the implementation of a reasonable warning which explains both the dangers of trans fat and the amount of trans fat in each product relative to the recommended daily allowance would cost Burger King far less than $75,000. On this point alone, this litigation belongs in Superior Court.

Second, Muhtar declares that "to cease using [trans fat] oil, Burger King ... would need to go through a series of steps to replace the [trans fat]," including: "completing research on an alternative oil; completing tests on the alternative oil ... ; entering into supply contracts to obtain the alternative oil ... ; and modifying operational manuals ..." Declaration of Jonathan Muhtar at ¶ 8. Burger King's own press release renders Muhtar's declaration unreliable.

On July 6, 2007, Burger King announced that it has engaged in a "nationwide rollout" of trans fat free oil.[6] The announcement stated that "[t]wo trans fat free oil blends have passed the company's rigorous operational, supply, and consumer criteria," and that tests were completed "on over a dozen core items."[7] If one is to receive Burger King's statement as genuine, one must eschew the Muhtar declaration – contrary to Muhtar's assertions, Burger King's press release

---

[6]   Press Release, Burger King®, Burger King Corp. Announces Nationwide Rollout of Trans Fat Free Oil, *at* http://www.bk.com/companyinfo/newsreleases.aspx (July 6, 2007).

[7]   Press Release, Burger King®, Burger King Corp. Announces Nationwide Rollout of Trans Fat Free Oil, *at* http://www.bk.com/companyinfo/newsreleases.aspx (July 6, 2007).

makes it clear that Burger King completed research and tests on alternative oil and arranged for supply contracts. Thus, Muhtar's declaration that the cost of these steps "would substantially exceed $75,000"[8] is at best moot; Burger King has already absorbed this cost.

Third, Muhtar declares that Burger King would "discontinue the use of" certain trans fat products "entirely" if it could find adequate alternatives.[9] Muhtar does not estimate the cost of finding adequate alternatives, let alone elaborate as to how Defendant arrived at such a cost. Rather, Muhtar baselessly claims that the discontinuation of certain trans fat products "would result in at least a loss of twenty-five percent of the total menu mix."[10] He then inexplicably extrapolates this number into a 25% loss in revenue of each of the seven Burger King restaurants in D.C. Muhtar's figures are purely speculative and unsupported. They are moreover irrelevant insofar as lost revenue does not necessarily equate to lost profit.

Burger King does not establish that the cost of adequate consumer warnings in its seven D.C. locations would exceed $75,000. By its own admission, Burger King completed the very steps listed as an expense in Muhtar's declaration. Furthermore, Defendant proffers no viable evidence in support of its assertions that future costs related to the replacement of trans fat in its D.C. locations would exceed $75,000. Thus, Defendant has failed to establish the minimum jurisdictional amount.

### III. The Court should reject "Defendant's Viewpoint" of costs in this diversity action.

Even if the Court permits Muhtar's declaration the benefit of many doubts, Burger King still fails to meet the requirements of federal jurisdiction. A party may not apply the alleged cost

---

[8] Declaration of Jonathan Muhtar at ¶ 13.
[9] Declaration of Jonathan Muhtar at ¶ 12.
[10] Declaration of Jonathan Muhtar at ¶ 12.

of injunctive relief towards the $75,000 jurisdictional threshold required in diversity actions. *See, e.g., National Organization of Woman v. Mutual of Omaha Ins. Co.,* 612 F. Supp. 100 (D.D.C. 1985); *Snow v. Ford Motor Co.,* 561 F.2d 787 (9th Cir. 1977); *Lonnquist v. J.C. Penney Co.,* 421 F.2d 597 (10th Cir. 1970). *See also, Snyder v. Harris,* 394 U.S. 332 (1969); *Zahn v. International Paper Co.,* 414 U.S. 291, 94 S. Ct. 505, 38 L. Ed. 2d 511 (1973). Defendant's lone reliance on *Smith v. Washington,* 593 F.2d 1097 (D.C. Cir. 1978) does not apply to this action before the Court, as that case arose under federal question jurisdiction and did not involve a motion for remand.

This Court sets forth a more apposite approach to the calculation of the minimum jurisdictional amount in the context of a remand motion in *National Organization of Woman.* There, the Court determined that application of the defendant's perspective *vis a vis* the cost of an injunction would run afoul of impermissible aggregation[11] and, in the process, openly invite a flood of litigation into federal court:

> To uphold defendant's position in the present case would allow a plaintiff who has no claim for the requisite compensatory damages merely to request injunctive relief, assign to that request a value measured in terms of defendant's compliance, and then litigate in the federal courts. If *Zahn* and *Snyder* mean anything at all, they stand for the proposition that federal courts should take a strict view in interpreting their diversity jurisdiction. Such an approach precludes the application of the defendant's view test and it forecloses, in the instant case, defendant's access to this Court. 612 F.Supp. at 108.

The Court in *National Organization of Woman* hence opted away from inappropriate aggregation and refused to consider the cost of compliance with an injunction. If the Court's opts to follow

---

[11] As the Ninth Circuit explains: "We agree that *Snyder* is controlling. 'Total detriment' is basically the same as aggregation. The only reason the injunction is worth more than $10,000 to Ford is that it would affect all of Ford's future trailer package sales to thousands of other individual consumers. In short, we hold that, where "the equitable relief sought is but a means through which the individual claims may be satisfied, the ban on aggregation [applies] with equal force to the equitable as well as the monetary relief." *National Organization of Women,* 612 F.Supp. at 108; *quoting Snow,* 561 F.2d at 790.

this precedent in the instant litigation, it should remand the action without consideration as to "Defendant's Viewpoint."

## CONCLUSION

For the reasons, set forth herein, Plaintiff respectfully requests that the Court remand this case to the Superior Court for the District of Columbia.

Dated: July 18, 2007                                Respectfully submitted,

                                                    /s/ SB

OF COUNSEL:                                         Steven N. Berk
                                                    **Chavez & Gertler LLP**
**Center for Science in the Public Interest**       1225 Fifteenth Street NW
Stephen Gardner, Director of Litigation             Washington, D.C. 20005
Kate Campbell, Staff Attorney                       Telephone: 202-232-7550
5646 Milton St., Ste. 211                           Facsimile: 202-232-7556
Dallas, Texas 75206
Telephone: 214-827-2774
Facsimile: 214-827-2787

OF COUNSEL:                                         *Attorneys for*
                                                    *Center for Science in the Public Interest*
**Chavez & Gertler LLP**
Mark A. Chavez
Nance F. Becker
Daniel Swerdlin
42 Miller Avenue
Mill Valley, CA 94941
Telephone: 415-381-5599
Facsimile: 415-381-5572

- 9 -

**CERTIFICATE OF SERVICE**

A copy of the foregoing was served July 18, 2007, using the Court's CM/ECF system, on counsel for defendant:

Roger Podesta, Esq.
Eric O. Grosz
Ada Fernandez Johnson (Bar No. 463296)
DEBEVOISE & PLIMPTON LLP
555 13th Street, N.W.
Washington, DC 20004-1169
Tel: (202) 383-8000
Fax: (202) 282-8118

_____
Steven N. Berk

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **Center for Science in the Public Interest,**<br><br>    Plaintiff,<br>v.<br><br>**Burger King Corporation,**<br>5505 Blue Lagoon Drive<br>Miami, FL 33126<br><br>    Defendant. | Civil Action No. 07-CV-1092 (RJL)<br><br>Judge Richard J. Leon |

### [PROPOSED] ORDER

UPON CONSIDERATION of the Motion to Remand by the Center for Science in the Public Interest and the supporting Statement of Points of Authorities:

IT IS, on this _____ day of _____, 2007, ORDERED that the motion is hereby GRANTED and this matter is remanded to the Superior Court for the District of Columbia.

_____
The Honorable Richard J. Leon
United States District Judge