## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **Center for Science in the Public Interest** | ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 1:07-cv-01092 (RJL) |
| v. | ) ) | |
| **Burger King Corporation** | ) ) | Judge Richard J. Leon |
| Defendant. | ) ) ) ) | |

## MOTION TO DISMISS

PLEASE TAKE NOTICE that, upon the accompanying Declaration of Erich O. Grosz, dated July 20, 2007, together with the exhibits attached thereto, the Statement of Points and Authorities in Support of Burger King Corporation's Motion to Dismiss, and all the other papers and proceedings had herein, defendant Burger King Corporation will move this Court, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, at a

time and place to be set by the Court, for an Order dismissing the Complaint, with

prejudice and without leave to replead.

Dated: New York, New York
       July 20, 2007

Respectfully submitted,

DEBEVOISE & PLIMPTON LLP

/s/ Roger E. Podesta
By:    Roger E. Podesta
       (admitted pro hac vice)
       Erich O. Grosz
       (admitted pro hac vice)

919 Third Avenue
New York, N.Y. 10022
Tel: (212) 909-6000
Fax: (212) 909-6836

/s/ Ada Fernandez Johnson
By:    Ada Fernandez Johnson
       (Bar No. 463296)

555 12th St., N.W.
Suite 1100E
Washington, D.C. 20004
Tel: (202) 383-8000
Fax: (202) 383-8118

*Attorneys for Defendant*
*Burger King Corporation*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CENTER FOR SCIENCE IN THE PUBLIC INTEREST, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No. 1:07-cv-01092 |
| v. | ) (RJL) |
| | ) |
| BURGER KING CORPORATION, | ) Judge Richard J. Leon |
| | ) |
| Defendant. | ) |
| | ) |

<u>STATEMENT OF POINTS AND AUTHORITIES IN SUPPORT OF
BURGER KING CORPORATION'S MOTION TO DISMISS</u>

DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, N.Y. 10022
Tel: (212) 909-6000
Fax: (212) 909-6836

555 12th St., N.W.
Suite 1100E
Washington, D.C. 20004
Tel: (202) 383-8000
Fax: (202) 383-8118

Attorneys for Defendant Burger King Corporation

Dated: July 20, 2007

## Table of Contents

Page

PRELIMINARY STATEMENT ................................................................................1

BACKGROUND ...................................................................................................6

ARGUMENT .......................................................................................................9

I.   The Complaint Should Be Dismissed Because CSPI Has Not Alleged Any Injury-In-Fact And Therefore Lacks Standing To Pursue Its Claims. ...........................9

II.  The Complaint Should Be Dismissed Because Burger King Has No Duty To Affirmatively Disclose Trans Fat Content. ..................................................11

    A.   The DCCPPA Imposes No Duty To Disclose. ........................................12

    B.   Implied Warranty Law Imposes No Duty To Disclose. .............................16

III. CSPI's Implied Warranty Claim Should Be Dismissed Because Burger King's Food Meets The Standard Of Merchantability. ............................................19

IV.  CSPI's Deception Claim Should Be Dismissed Because Burger King's Alleged Nondisclosure Does Not "Tend To Mislead" Consumers Into Believing That Its Foods Are Free Of Trans Fat Content............................................................21

V.   Federal Law Preempts CSPI's Claims...........................................................22

CONCLUSION..................................................................................................27

Table of <u>Authorities</u>

<u>Page</u>

**FEDERAL CASES**

<u>Anunziato v. eMachines, Inc.</u>, 402 F. Supp. 2d 1133 (C.D. Cal. 2005) ...........................11

<u>Brown v. U.S.</u>, 271 F. Supp. 2d 225 (D.D.C. 2003).................................................3

<u>Cephas v. MVM, Inc.</u>, 403 F. Supp. 2d 17 (D.D.C. 2005).....................................3

<u>Colacicco v. Apotex, Inc.</u>, 432 F. Supp. 2d 514 (E.D. Pa. 2006) ......................25

<u>Fraker v. KFC Corporation</u>, 2007 WL. 1296571 (S.D. Cal. Apr. 30, 2007) .......................1

<u>Freightliner Corp. v. Myrick</u>, 514 U.S. 280 (1995).........................................26

<u>Fuller Brothers, Inc. v. Int'l Mktg., Inc.</u>, 928 F. Supp. 1042 (D. Or. 1996) ......................11

<u>Geier v. Am. Honda Motor Co.</u>, 529 U.S. 861 (2000).............................................23, 25, 26

<u>Hoyte v. Yum! Brands, Inc.</u>, 2007 WL. 1302590 (D.D.C. May 2, 2007) .....1, 3, 10, 21, 22

<u>In re Olson</u>, 884 F.2d 1415 (D.C. Cir. 1989)........................................................18

<u>Indus. Truck Ass'n, Inc. v. Henry</u>, 125 F.3d 1305 (9th Cir. 1997)...................................25

<u>Kowal v. MCI Communications Corp.</u>, 16 F.3d 1271 (D.C. Cir. 1994) ...........................9

<u>Krooth & Altman v. N. Am. Life Assurance Co.</u>, 134 F. Supp. 2d 96 (D.D.C. 2001)........3

<u>Marshall Cty. Health Care Auth. v. Shalala</u>, 988 F.2d 1221 (D.C. Cir. 1993)...................2

<u>Medtronic, Inc. v. Lohr</u>, 518 U.S. 470 (1996) .................................................................24

<u>N. Am. Catholic Educ. Programming Foundation, Inc. v. F.C.C.</u>, 437 F.3d 1206 (D.C. Cir. 2006) ......................................................................................... 14-15

<u>Nat'l Home Equity Mortgage Ass'n v. Office of Thrift Supervision</u>, 271 F. Supp. 2d 264 (D.D.C. 2003).................................................................................................25

<u>Papike v. Tambrands, Inc.</u>, 107 F.3d 737 (9th Cir. 1997) .................................................25

<u>Pelman v. McDonald's Corp.</u>, 237 F. Supp. 2d 512 (S.D.N.Y. 2003) ........................18, 20

<u>Phillips v. Bureau of Prisons</u>, 591 F.2d 966 (D.C. Cir. 1979)...........................................2

Table of Authorities
(continued)

Page

Public Citizen, Inc. v. Shalala, 932 F. Supp. 13 (D.D.C. 1996) ........................................13

Reyes v. McDonald's Corp., 2006 WL 3253579 (N.D. Ill. Nov. 8, 2006) ......................25

Rivera v. Wyeth-Ayerst Laboratories, 283 F.3d 315 (5th Cir. 2002)...............................11

Rodriguez v. P.R. Federal Affairs Admin., 435 F.3d 378 (D.C. Cir. 2006)......................15

Vermont Pure Holdings, Ltd. v. Nestle Waters N. Am., 2006 WL. 839486 (D. Mass.
    Mar. 28, 2006)........................................................................................................25

Washington Post v. Robinson, 935 F.2d 282 (D.C. Cir. 1991) ........................................18

Wells v. Allstate Insurance Co., No. 00-0760, 2006 U.S. Dist. LEXIS 4694 (D.D.C. Jan.
    24, 2006)................................................................................................................12

Weyrich v. The New Republic, Inc., 235 F.3d 617 (D.C. Cir. 2001)..................................9

Williams v. Purdue Pharma Co., 297 F. Supp. 2d 171 (D.D.C. 2003).........................10, 12

## STATE CASES

Brennan v. Shepherd Park Pharmacy, 138 A.2d 494 (D.C. 1958) ....................................20

Brown v. McDonald's Corp., 101 Ohio App. 3d 294 (Ohio Ct. App. 1995).....................16

Desatnik v. Lem Motlow, Prop., Inc., 1986 Ohio App. LEXIS 5240, 84 C.A. 104 (Oh.
    Ct. of App. Jan. 9, 1986) ......................................................................................18

Edwards v. Hop Sin, Inc., 140 S.W.3d 13 (Ky. Ct. App. 2003).......................................16

Hakki v. Zima Co., No. 03-9183, 2006 WL. 852126 (D.C. Super. Ct. 2006)...................10

Hochberg v. O'Donnell's Restaurant, 272 A.2d 846 (D.C. 1971).....................................19

Livingston v. Marie Callenders, Inc., 72 Cal. App. 4th 830 (Cal. Ct. App. 1999)............16

Morris v. Adolph Coors Co., 735 S.W.2d 578 (Tex. Ct. App. 1987).................................18

Settles v. Redstone Dev. Corp., 797 A.2d 692 (D.C. 2002) ..............................................12

<u>Table of Authorities</u>
(continued)

Page

## FEDERAL STATUTES, REGULATIONS AND RULES

21 C.F.R. § 101.9 .................................................................................................13

21 C.F.R. § 101.10 ............................................................................................13, 23

21 C.F.R. § 101.13 ...................................................................................................22

21 C.F.R. § 101.45 ...................................................................................................23

21 U.S.C. § 343 ...........................................................................................13, 23, 24

21 U.S.C. § 343-1 .............................................................................................23, 24

Food Labeling: Trans Fatty Acids in Nutrition Labeling, Nutrient Content Claims, and
Health Claims, 68 Fed. Reg. 41434, 41483 (Jul. 11, 2003)
("FDA Final Rule") ...........................................................................7, 13, 23, 25

Fed. R. Evid. 201(a) ................................................................................................18

## STATE STATUTES AND REGULATIONS

D.C. Code § 28:2-314(2) .........................................................................................19

D.C. Code § 28-3904 ........................................................................................12, 21

D.C. Code § 28-3905 ...............................................................................................14

D.C. Mun. Regs. title 25, §1102 .............................................................................14

D.C. Mun. Regs. title 25, § 9901 ............................................................................14

## TREATISES AND SECONDARY SOURCES

29 Am. Jur. 2d Evidence § 33 (2006) ....................................................................18

31A C.J.S. Evidence § 10 (2006).............................................................................18

Restatement (Second) of Torts, §402A...................................................................17

<u>Standardized Civil Jury Instructions for the District of Columbia</u>, §23.02[1]....................19

STATEMENT OF POINTS AND AUTHORITIES IN SUPPORT OF
BURGER KING CORPORATION'S MOTION TO DISMISS

Defendant Burger King Corporation ("Burger King") submits this Statement of Points

and Authorities in support of its motion to dismiss the Complaint of plaintiff Center for Science

in the Public Interest ("plaintiff" or "CSPI"), dated May 16, 2007 (the "Complaint"), pursuant to

Federal Rule of Civil Procedure 12(b)(6).

PRELIMINARY STATEMENT

This lawsuit presents essentially the same issues that recently were raised and resolved

against the plaintiff in a virtually identical action.  Having failed to convince the Food and Drug

Administration or legislators at the federal or state level to ban the use of partially hydrogenated

vegetable oil in food preparation, CSPI, an advocacy group, oversaw a trans fat lawsuit filed last

year against KFC in an effort to achieve by litigation what it has been unable to accomplish

through the legislative and regulatory processes.  That case was dismissed for lack of standing by

Judge Robertson of this Court less than three months ago.  See Hoyte v. Yum! Brands, Inc., Civil

Action No. 06-1127 (JR), 2007 WL 1302590 (D.D.C. May 2, 2007).[1]  This lawsuit should meet

the same fate.

According to CSPI, partially hydrogenated vegetable oil, which contains trans fat, "is

absolutely unnecessary" to the preparation of any food and should be replaced with other oils

that are free of trans fat.  Complaint ¶ 26.  In the first phase of its war on trans fat, CSPI

petitioned the FDA to add trans fat to the list of items that must be disclosed in nutritional

labeling for packaged (but not restaurant) foods, and the FDA responded by issuing new trans fat

---

[1]     See also Fraker v. KFC Corporation, No. 06-CV-01284-JM (WMC), 2007 WL 1296571
(S.D. Cal. Apr. 30, 2007) (dismissing with prejudice the California Consumer Legal
Remedies Act version of the Hoyte lawsuit).

disclosure regulations that became effective on January 1, 2006. As the next offensive in its campaign, CSPI filed a petition asking the FDA to go even further and impose an outright ban on the use of partially hydrogenated vegetable oils "in both packaged foods and foods served in restaurants and other food-service establishments."[2] This time, however, the FDA did not act on CSPI's request.

---

[2] Center for Science in the Public Interest, Petition for Rulemaking to Revoke the Authority for Industry to Use Partially Hydrogenated Vegetable Oils in Foods, available at http://cspinet.org/new/pdf/trans_fat_petition_may_18.pdf (submitted to U.S. Food and Drug Administration on May 18, 2004), at 1-2. On a motion to dismiss, the Court properly may refer to materials which are part of the public record. See, e.g., Marshall Cty. Health Care Auth. v. Shalala, 988 F.2d 1221, 1226 n.6 (D.C. Cir. 1993); Phillips v. Bureau of Prisons, 591 F.2d 966, 969 (D.C. Cir. 1979). Accordingly, for purposes of this motion, the Court may consider the following documents, copies of which have been attached as exhibits to the accompanying Declaration of Erich O. Grosz and identified herein as "Ex. ___":

- U.S. Department of Health and Human Services, Dietary Guidelines for Americans 2005, Ch. 6 ("2005 Dietary Guidelines") (Ex. 1) (public record)

- U.S. Department of Health and Human Services, Guidelines: Aim for Fitness ("HHS Aim For Fitness Statement") (Ex. 2) (public record)

- U.S. Department of Health and Human Services, HHS Unveils FDA Strategy to Help Reduce Obesity (March 12, 2004) ("HHS 3/12/04 Statement") (Ex. 3) (public record)

- U.S. Food and Drug Administration, Questions and Answers about Trans Fat Nutrition Labeling (updated January 1, 2006) ("FDA Trans Fat Q&A") (Ex. 4) (public record)

- U.S. Food and Drug Administration, FDA News: FDA Receives Keystone Forum Report on Away-From-Home Foods (June 2, 2006) ("FDA 6/2/06 Statement") (Ex. 5) (public record)

- National Academy of Sciences / Institute of Medicine Letter Report on Dietary Reference Intakes for Trans Fatty Acids (2002), available at http://www.iom.edu/CMS/5410.aspx ("IOM Report") (Ex. 6) (public record; referred to at Complaint ¶ 22)

- U.S. Food and Drug Administration, Nutrition Subcommittee of the Food Advisory Committee, Summary Minutes of Nutrition Subcommittee, April 27 & 28, 2004,

Stymied by the FDA, CSPI turned to litigation in an effort to enact its preferred public policy: in Hoyte, supra, CSPI (via an individual plaintiff) contended that KFC had failed to disclose the presence of trans fat in its menu items and had misled the public about that trans fat content. However, Judge Robertson granted KFC's motion to dismiss, reasoning that because the plaintiff had not alleged any personal injury or economic loss, he lacked standing to proceed and could not state a claim. Hoyte, 2007 WL 1302590, at *2-3. The plaintiff chose not to appeal from this ruling. Instead, CSPI brought this lawsuit, which should be dismissed for the same reasons as its predecessor and for several other reasons favorably noted but not reached by Judge Robertson.

---

available at http://www.fda.gov/OHRMS/DOCKETS/ac/04/minutes/2004-4035m1-summary.pdf (Ex. 7) (public record; referred to at Complaint ¶ 22)

• Center for Science in the Public Interest, Petition for Rulemaking to Revoke the Authority for Industry to Use Partially Hydrogenated Vegetable Oils in Foods, available at http://cspinet.org/new/pdf/trans_fat_petition_may_18.pdf (submitted to U.S. Food and Drug Administration on May 18, 2004) ("CSPI Petition") (Ex. 8) (public record)

The Court also may consider documents referred to in the complaint (like certain of the documents listed above) or relied upon for the claims therein. See Cephas v. MVM, Inc., 403 F. Supp. 2d 17, 20 (D.D.C. 2005); Brown v. U.S., 271 F. Supp. 2d 225, 228 (D.D.C. 2003); Krooth & Altman v. N. Am. Life Assurance Co., 134 F. Supp. 2d 96, 99 (D.D.C. 2001). Here, CSPI accuses Burger King of failing to disclose the trans fat content of its food, yet relies in Paragraph 25 of its Complaint on Burger King's website and restaurant posters to establish the trans fat content of its food. The examples in Paragraph 25 are lifted directly from the nutritional content disclosures made by Burger King on its website and on posters in its restaurants. Accordingly, on this motion to dismiss, the Court properly may consider Burger King's website and restaurant posters, which include disclosure of trans fat content. The Burger King nutritional information poster, which is available at Burger King Restaurants, is attached as Exhibit 9 ("BK Poster"), and the Burger King website is available at http://www.bk.com, with nutritional information (including trans fat content) for Burger King's menu items at http://www.bk.com/Nutrition/PDFs/brochure.pdf ("BK Website") (Ex. 10).

In the Complaint, purportedly brought on behalf of CSPI's members and "the interests of D.C. Consumers," Complaint ¶ 18, CSPI contends that the trans fat content of Burger King's food renders it unfit for human consumption and that Burger King fails to disclose the trans fat content to its customers. CSPI alleges that Burger King's practices therefore breach its implied warranty of merchantability and constitute "deception and misrepresentation" in violation of the D.C. Consumer Protection Procedures Act ("DCCPPA"). As shown below, neither claim can be sustained.

First, like the named plaintiff in <u>Hoyte</u>, CSPI lacks standing. In order to pursue a claim under the DCCPPA, a plaintiff must plead an injury-in-fact. The named plaintiff in <u>Hoyte</u>, a medical doctor of many years' experience, purchased and consumed food allegedly containing trans fat at KFC restaurants. Purporting to represent a class of D.C. consumers, Dr. Hoyte filed a complaint seeking both monetary damages and injunctive relief, alleging that both he and the class were deceived because they purchased food at KFC restaurants while being unaware of its trans fat content. However, he did not claim to have suffered any personal injury as a result, and advanced no plausible allegations of economic loss. Judge Robertson found those allegations insufficient to confer standing on the plaintiff. CSPI's claims of injury suffer from the same deficiencies as those in <u>Hoyte</u>: CSPI does not allege <u>any</u> actual injury (personal, economic or otherwise), and contends only that Burger King has violated a purported right of consumers in the District to receive information about trans fat content in restaurant food. Under established District case law, mere allegations of the violation of an abstract right to receive information are insufficient to confer standing to sue. The reasoning in <u>Hoyte</u> squarely applies to CSPI's claims and the outcome should be the same: dismissal.

Furthermore, both claims also fail for want of any legal duty on the part of Burger King to make the disclosures sought by CSPI. Nothing in the common law of the District or any other jurisdiction in the United States requires food sellers to disclose ingredients or nutrients that, like trans fat, may pose a risk of harm only if consumed in excessive quantities over an extended period of time. Nor can the "material fact" clause of the DCCPPA be construed to impose the duty proposed by CSPI when (1) the District has adopted federal regulations that specifically exempt restaurants from any mandatory disclosure of nutritional information; and (2) the D.C. Council has twice considered but declined to enact legislation that would have required disclosure of nutritional information by restaurants. The DCCPPA is a general anti-fraud statute designed to deter improper or fraudulent trade practices, not to establish nutritional information standards.

The implications of the duty proposed by plaintiff would be momentous: everyone who ever ate a meal that contained trans fat and who was not informed of the trans fat content of the meal at the point of sale could sue the provider of that food. Since virtually no District restaurants and, prior to January 1, 2006, few purveyors of packaged food made such disclosures, this would threaten to unleash a wave of liability that would create substantial exposure for huge numbers of restaurants, chains, bakeries and other food sellers. The same theory also would support claims against any food seller or restaurateur who did not notify his or her customers that particular foods contained saturated fat, cholesterol, sodium or any other nutrient or ingredient that is associated with potential health risks, if at all, only when consumed in excess. There is no legal or common sense justification for opening the door to such an avalanche of potential claims.

Additionally, in order to state a "deception" claim under Section 3904(f) of the DCCPPA, CSPI must allege not only that Burger King failed to disclose the trans fat content of its food, but that Burger King's supposed nondisclosure would tend to mislead the ordinary consumer into believing that its food contained no trans fat. However, CSPI does not allege that Burger King made any affirmative representation that its food was trans fat free, and especially in the context of quick-service restaurant food, Burger King's alleged silence cannot be converted into an implicit assurance that its food is free of trans fat. Moreover, any such inference becomes utterly indefensible given that Burger King discloses the trans fat content of its food on its web site and on posters in its restaurants, which the Court may consider on this motion to dismiss. If any consumer wants information about the trans fat content of Burger King menu items, he or she need do nothing more than look at the nutritional information posters in each Burger King restaurant or log on to Burger King's website, where trans fat content information is readily available.

Lastly, Burger King's voluntary disclosures of trans fat content are in full compliance with the requirements of the Nutrition Labeling and Education Act of 1990 ("NLEA") and the FDA regulations promulgated under the NLEA. CSPI's claims, which seek injunctive relief, are therefore preempted by federal law.

For these reasons, Burger King respectfully requests that the Court reject CSPI's attempt to impose through litigation its own ideal standards for the preparation and sale of food, and dismiss the Complaint.

## BACKGROUND

Partially hydrogenated vegetable oil, which is used by a vast array of food suppliers and restaurateurs in the preparation of hundreds of different packaged and prepared foods, has drawn the ire of CSPI because it contains trans fat. Trans fat "is a specific type of fat formed when

liquid oils are made into solid fats," although "a small amount of trans fat is found naturally, primarily in some animal-based foods."  FDA Trans Fat Q&A (Ex. 4) at 3.  It is common knowledge that consumption of excessively high levels of fat over an extended period of time has been associated with certain increased health risks.  See, e.g., IOM Report (Ex. 6) at 14; 2005 Dietary Guidelines (Ex. 1) at 29.  The FDA considers saturated fat and trans fat to be similar in this regard: "Trans fat behaves like saturated fat by raising low-density lipoprotein (LDL or 'bad') cholesterol that increases your risk of coronary heart disease (CHD)."  FDA Trans Fat Q&A (Ex. 4) at 3.  The FDA therefore recommends keeping "consumption of both saturated and trans fats and cholesterol low while consuming a nutritionally adequate diet."  Id. at 5.  However, the FDA also recognizes that the average American consumes far less trans fat than saturated fat.  Id. at 4; Food Labeling: Trans Fatty Acids in Nutrition Labeling, Nutrient Content Claims, and Health Claims, 68 Fed. Reg. 41434, 41483 (Jul. 11, 2003) (to be codified at 21 C.F.R. pt. 101) ("FDA Final Rule") ("FDA agrees . . . that the average saturated fat intake in the United States is about 5 times greater than the average trans fat intake.").

Hundreds of different foods contain trans fats.  According to the U.S. Department of Health and Human Services, major sources of trans fats include: cakes, cookies, crackers, pies and bread (40% of total trans fats consumed); animal products (21%); margarine (17%); fried potatoes (8%); potato chips, corn chips and popcorn (5%); household shortening (4%); and other sources including breakfast cereal and candy (5%).  See 2005 Dietary Guidelines (Ex. 1) at Table 11.  The National Academy of Sciences also recognizes that trans fat is present in different sources containing "traditional stick margarine . . . and vegetable shortenings . . . that have been subjected to hydrogenation," milk, butter and meats.  IOM Report (Ex. 6) at 4.

7

Like many other restaurants and food suppliers, Burger King currently uses partially hydrogenated vegetable oil in the preparation of some of its food, including in both frying and par-frying, and therefore some, but not all, menu items sold at Burger King contain trans fat.[3] See Complaint ¶ 3; BK Poster (Ex. 9); BK Website (Ex. 10). Burger King voluntarily provides its customers with access to detailed nutritional information, including the trans fat content of its menu items. It makes that information available in two principal ways. First, a poster in each restaurant displays the nutritional content, including trans fat content, of Burger King's menu items. See BK Poster (Ex. 9). Second, the Burger King website also displays the nutritional content, including trans fat content, of the menu items. See BK Website (Ex. 10).

Despite the widespread knowledge that many types of fast food often contain high levels of fat and Burger King's voluntary efforts to make nutritional information available to its customers, CSPI claims that D.C. consumers are unaware that Burger King menu items may contain trans fat, although CSPI itself cannot claim to have been deceived given its self-proclaimed expertise in nutrition and long involvement in legal and regulatory issues regarding trans fat. Complaint ¶ 34. CSPI seeks injunctive relief – specifically, CSPI asks this Court for "an order enjoining Burger King's continued use of trans fats or, in the alternative, ordering Burger King to take all necessary actions to insure [sic] that D.C. Consumers are informed, immediately prior to buying any Burger King food prepared using trans fats, that the food contains trans fats." Complaint, Prayer for Relief ¶ 2.

---

[3]    Like many other quick-service restaurant chains, Burger King is in the process of removing trans fat from its food. Burger King recently announced that it will eliminate the use of trans fat in cooking oil in all of its restaurants by the end of 2008 and is working with its suppliers to reduce or eliminate the trans fat content of par-fried foods provided by those suppliers. See Burger King Press Release attached as Exhibit 11 to the accompanying Declaration of Erich O. Grosz.

ARGUMENT

In reviewing this motion to dismiss, the Court must assume that plaintiff's factual allegations are true, but may not accept "inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint" or "legal conclusions cast in the form of factual allegations." Kowal v. MCI Communications Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994). "Dismissal under Rule 12(b)(6) is proper when, taking the material allegations of the complaint as admitted, . . . and construing them in plaintiff's favor, . . . the court finds that the plaintiff has failed to allege all the material elements of his cause of action." Weyrich v. The New Republic, Inc., 235 F.3d 617, 623 (D.C. Cir. 2001) (internal citations omitted).

I.    The Complaint Should Be Dismissed Because CSPI Has Not Alleged Any Injury-In-Fact And Therefore Lacks Standing To Pursue Its Claims.

CSPI does not allege that it or any of the members of the public whose interests it purports to represent have suffered any injury-in-fact. CSPI nowhere alleges that any D.C. consumers have or will sustain any personal injury as a result of consuming Burger King food containing trans fat, or that they have sustained any economic loss. Accordingly, because CSPI does not allege any legally cognizable injury, it lacks standing to pursue its claims under the DCCPPA.

The same absence of any alleged injury-in-fact resulted in Judge Robertson's dismissal of the very similar complaint in Hoyte earlier this year. In that case, the named plaintiff, a medical doctor, alleged that he purchased and consumed KFC food that contained trans fat, and, like CSPI in this case, brought claims for breach of implied warranty and deception under the DCCPPA. The plaintiff did not "allege that the food he ordered was in any way unpalatable or that he suffered any immediate ill effects after he ate his order," nor did he claim any "emotional harm, pain or suffering," and although he mentioned unspecified "economic injuries," no such

injury was "evident from the facts presented, even under the most charitable reading of the complaint." Hoyte, 2007 WL 1302590, at *2.   Judge Robertson held squarely that a "plaintiff must present an actual or threatened injury-in-fact to have standing to raise his DCCPPA claims" and dismissed those claims based on the absence of any such allegations. Id. at *3.  That decision, which was not appealed, is directly on point and supports the same result here.

CSPI's claims also are of the sort that Judge Collyer dismissed for lack of standing in Williams v. Purdue Pharma Co., 297 F. Supp. 2d 171 (D.D.C. 2003).  The plaintiffs in Williams, who were prescribed OxyContin for pain but "who personally suffered no ill effects or lack of efficacy," sought to bring a class action under the DCCPPA for economic damages based on the defendants' alleged misrepresentations regarding the drug. Id. at 172.  Recognizing that standing "requires a showing of actual or threatened injury redressable by the court," id. at 177, the court found that the plaintiffs had not alleged a cognizable injury-in-fact:

> [Plaintiffs] do not allege that OxyContin failed to provide them with effective pain relief or that they suffered any adverse consequences from their use of OxyContin.  Defendants argue that, absent such allegations, "it must be assumed that OxyContin worked for plaintiffs and that consequently they got what they paid for."  The Court agrees.  Without alleging that a product failed to perform as advertised, a plaintiff has received the benefit of his bargain and has no basis to recover purchase costs. . . .  The invasion of a purely legal right without harm to the consumer – in this case, to freedom from alleged false and misleading advertising – can be addressed through the administrative process of the Government of the District of Columbia.  Should they wish to pursue this matter, plaintiffs should avail themselves of that forum.  Without a particularized injury, absent in this case, they do not have standing to proceed in court.

Id. at 176, 178 (internal citations omitted); see also Hakki v. Zima Co., No. 03-9183, 2006 WL 852126, at *2 (D.C. Super. Ct. 2006) ("Hypothetical injuries cannot confer standing where an actual injury is not alleged in the complaint"; dismissing complaint for plaintiff's failure to

10

"plead an injury in fact to a legally protected interest that is particular to him."); <u>Rivera v. Wyeth-Ayerst Laboratories</u>, 283 F.3d 315, 319-20 (5th Cir. 2002) (Plaintiff has not alleged "injury in fact" where she claims that the defendant failed to provide information regarding a drug but does not claim to have suffered any injury herself as a result of the alleged omissions.); <u>Anunziato v. eMachines, Inc.</u>, 402 F. Supp. 2d 1133, 1136 (C.D. Cal. 2005) (Under California consumer protection statute, "a plaintiff must now have suffered injury" to have standing.); <u>Fuller Brothers, Inc. v. Int'l Marketing, Inc.</u>, 928 F. Supp. 1042, 1045 (D. Or. 1996) ("Some showing of an 'injury in fact' is required to meet the standing requirements for an action in this court.").

Like the plaintiffs in <u>Hoyte</u> and <u>Williams</u>, CSPI has not alleged any injury-in-fact. CSPI does not contend that it or any of the consumers it purports to represent suffered any personal injuries, ate any unpalatable meals or sustained any economic loss as a result of the consumption of Burger King menu items that contained trans fat. Instead, CSPI asserts only that D.C. consumers have a legal right to receive information about the trans fat content of their food, and that Burger King violated that right (even though it caused no actual harm by doing so). As the judges in <u>Hoyte</u> and <u>Williams</u> correctly concluded, a claim for the alleged violation of an abstract right to receive information cannot proceed in court absent any allegation of injury-in-fact – instead, it should be addressed through the legislative or administrative process, an arena in which CSPI has substantial experience. Accordingly, CSPI's Complaint should be dismissed.

II.     <u>The Complaint Should Be Dismissed Because Burger King Has No Duty To Affirmatively Disclose Trans Fat Content.</u>

CSPI's claims that Burger King breached its implied warranty of merchantability and deceived D.C. consumers are both based on the same underlying theory – that Burger King should affirmatively inform its consumers, at the point of purchase, of the trans fat content of the

items that they buy. Both therefore fail to state a claim because Burger King has no legal duty to make such disclosure. "The question . . . whether a defendant owes a duty to the plaintiff under a particular set of circumstances is entirely a question of law that must be determined only by the court." Settles v. Redstone Dev. Corp., 797 A.2d 692, 695 (D.C. 2002) (quoting Croce v. Hall, 657 A.2d 307, 310 (D.C. 1995)). Nothing in the DCCPPA or in the common law requires Burger King to disclose the trans fat content of its food. To the contrary, both federal and District statutes and regulations expressly exempt Burger King from any obligation to provide such information.

A.    The DCCPPA Imposes No Duty To Disclose.

As the basis for its assertion that Burger King improperly fails to disclose the trans fat content of its food, CSPI relies on Section 28-3904(f) of the Act, which prohibits the "fail[ure] to state a material fact if such failure tends to mislead." D.C. Code § 28-3904(f) (2007). But this general clause cannot be construed to impose a duty on restaurants to disclose ingredients or nutrients of food that they serve, or, on Burger King, to disclose the use of partially hydrogenated oils.

First, it would be inconsistent with the history and purpose of the DCCPPA to read into it a general duty on restaurants to disclose ingredients or nutrients. The statute was intended "to protect local consumers from improper and fraudulent trade practices," Williams v. Purdue Pharma Co., 297 F. Supp. 2d 171, 174 (D.D.C. 2003), and to "deter potentially fraudulent conduct," Wells v. Allstate Insurance Co., No. 00-0760, 2006 U.S. Dist. LEXIS 4694, at *18 (D.D.C. Jan. 24, 2006), not as a vehicle for plaintiffs to test new theories of liability and advance their public policy goals.

Second, CSPI's interpretation of the DCCPPA would place it in flat contradiction of both federal and District statutes and regulations specifically governing the nutritional labeling of

12

restaurant food. Like the common law, the federal laws and regulations that govern the production, labeling and sale of food do not require restaurants to disclose trans fat content or any other nutrient content. Restaurants are expressly exempted from the mandatory nutrition labeling requirements of the NLEA. 21 U.S.C. § 343(q)(5)(A)(i) (2007) ([These requirements shall not apply to food] "which is served in restaurants or other establishments in which food served for immediate human consumption or which is sold for sale or use in such establishments."); see also Public Citizen, Inc. v. Shalala, 932 F. Supp. 13, 15 (D.D.C. 1996) ("Restaurants are completely exempt from [the general nutrition labeling] standards and requirements.").[4] Even suppliers of packaged foods were not required to identify the trans fat content of their products until new FDA regulations went into effect on January 1, 2006. 21 C.F.R. § 101.9(c)(2)(ii); FDA Final Rule, 68 Fed. Reg. 41434. Under the new FDA trans fat regulations, restaurants are not required to disclose the trans fat content of their food unless the labeling, if any, contains a specific claim regarding the health or nutrient content of the food. See 21 C.F.R. § 101.10 (2007) ("Nutrition labeling [as mandated by these regulations] shall be provided upon request for any restaurant food or meal for which a nutrient content claim . . . or a health claim . . . is made . . . ."); FDA Final Rule, 68 Fed. Reg. at 41473 ("Restaurant food is not subject to mandatory nutrition labeling requirements, unless a nutrition-related claim is made.").

The D.C. Council has largely adopted the federal standards for food labeling and incorporated them into D.C. law. Nothing in these standards imposes a duty on restaurateurs to notify consumers of the ingredients or nutrient content of their food. To the contrary, the D.C.

---

[4]     Nevertheless, as discussed at Part V, the NLEA and its accompanying regulations encourage restaurants to make voluntary disclosures of nutrient content and offer a range of means by which to do so. Burger King has made such voluntary disclosures, and, as discussed below, CSPI's claims are preempted by those federal regulations.

Municipal Regulations governing food labeling requirements limit their scope to "packaged" food (defined expressly to exclude "a wrapper, carry-out box, or other nondurable container used to containerize food . . . during service and receipt of the food by the consumer") and bulk food, and expressly adopt the exemptions (including those for restaurants) that are part of the NLEA. D.C. Mun. Regs. title 25, §§ 1102, 9901 (2007). Furthermore, the D.C. Council twice recently considered but chose not to enact legislation that would impose a duty on D.C. restaurateurs to provide nutritional information. See Menu Education and Labeling Act of 2005, B16-495, D.C. Council (2005) (bill that would require D.C. chain restaurants to provide all "nutritional information" including calories and trans fat content); Nutritional Information at Restaurants Act of 2003, B15-387, D.C. Council (2003) (same).

To construe the DCCPPA to impose the duty proposed by CSPI would upset the settled expectations of all restaurants and other dining establishments in the District and impose draconian consequences. Under CSPI's theory, restaurants would face the prospect of courts enjoining their sale of particular foods that their competitors remain free to sell, as well as possible penalties of $1500 for each violation, punitive damages and attorney's fees. See D.C. Code § 28-3905(k)(1) (2007). Yet very few D.C. restaurants disclose information about trans fat content and, until the trans fat labeling regulations went into effect on January 1, 2006, few purveyors of packaged food did so, either. Are all those who did not disclose when the relevant statutes and regulations did not require disclosure guilty of actionable fraud under the DCCPPA? If so, the D.C. Municipal Regulations on which those restaurants and food suppliers relied constitute an extraordinary trap for the unwary.

In these circumstances, the more general law – the DCCPPA's "material fact" provision – must yield to the specific laws governing food labeling, and CSPI's effort to impose a duty in the

face of clear federal and District law to the contrary should be rejected. See N. Am. Catholic

Educ. Programming Found., Inc., v. F.C.C., 437 F.3d 1206, 1209 (D.C. Cir. 2006) ("It is a

commonplace of statutory construction that the specific governs the general.") (citing Morales v.

Trans World Airlines, Inc., 504 U.S. 374, 384 (1992)); Rodriguez v. P.R. Fed. Affairs Admin.,

435 F.3d 378, 382-83 (D.C. Cir. 2006), cert. denied, 127 S. Ct. 347 (2006) ("[T]he canons of

statutory construction require that the specific govern the general.").

Plaintiff's novel theory of liability reaches far beyond the circumstances of this case: an

individual who purchases and consumes food that may pose an increased health risk (if at all)

only if consumed in excess over a long period, who suffers no ill effects, but who subsequently

has second thoughts about his or her purchases, would be able to sue to enjoin the sale of that

food or force the seller to provide information beyond what any federal or state law or regulation

requires.[5]  Anyone could pursue a claim against any restaurant or food supplier from whom he or

she ever bought a meal or snack containing trans fat – from French fries at the local diner to

popcorn at the movie theater or Maryland crab cakes at a waterfront restaurant.  Nothing would

prevent CSPI or anyone else from bringing virtually identical claims with regard to any

ingredient or nutrient associated with potential health risks when consumed in excess.[6]  The

---

[5]    Indeed, in Paragraph 37 of the Complaint, CSPI suggests that Burger King has a duty to go
beyond its current disclosures of trans fat content and also disclose potential adverse health
consequences of consumption of food containing trans fat.  The ramifications of such a duty
would be truly extraordinary: the same principle could be applied to virtually any ingredient
in restaurant and packaged foods, and thereby require warnings about the potential health
consequences of nearly every ingredient in the food.

[6]    Food containing saturated fat, which is extremely common in the American diet, would be
an obvious target for CSPI's next attempt at regulation-by-litigation, particularly given that
CSPI considers consumption of saturated fat to be a major health risk and recognizes that the
average American consumes far more saturated fat than trans fat.  See CSPI Petition (Ex. 8)
at 15 n.71 ("[I]t is also important to address saturated fat, a major dietary contributor to heart

determination of whether it should be permissible to sell food containing trans fat, saturated fat or any other such nutrient or ingredient, and the determination of what information the seller must provide about such nutrients or ingredients, are matters of public policy for legislative or regulatory resolution, not for case-by-case application of unprecedented and unbounded theories of liability.

B.    Implied Warranty Law Imposes No Duty To Disclose.

Like the DCCPPA, the common law imposes no duty on Burger King to affirmatively disclose the trans fat content of its food. Diligent research has revealed not a single case in the District or elsewhere in which a court has recognized a common-law duty on restaurateurs or food suppliers to disclose ingredients or nutrients that do not cause any immediate harm but pose a potential health risk, if at all, only if consumed in significant quantities over an extended period of time. The case law extends a food supplier's disclosure obligation only to situations involving known allergens or toxins, which present an immediate danger of acute harm. See, e.g., Edwards v. Hop Sin, Inc., 140 S.W.3d 13 (Ky. Ct. App. 2003) (finding issue of fact whether restaurant had duty to warn customer of bacterium found in raw oysters where customer suffered immediate serious illness); Livingston v. Marie Callenders, Inc., 72 Cal. App. 4th 830 (Cal. Ct. App. 1999) (finding issue of fact whether restaurant should have warned of MSG in soup, where plaintiff suffered "respiratory arrest, hypoxia, cardiac arrest, and brain damage"); Brown v. McDonald's Corp., 101 Ohio App. 3d 294 (Ohio Ct. App. 1995) (finding issue of fact whether defendant should have warned of presence of seaweed-derived ingredient in hamburger, where allergic reaction to ingredient required immediate hospitalization).

---

disease"; the amount of calories from saturated fat in the average American adult diet is "several-fold more" than the amount of calories from trans fat.).

This absence of case law recognizing the duty proposed by CSPI is reinforced by a fundamental principle of tort law: there is no duty to warn of risks that are commonly known, such as the potential health risks associated with excessive consumption of fat. According to the Restatement (Second) of Torts:

> Many products cannot possibly be made entirely safe for all consumption, and any food or drug necessarily involves some risk of harm, if only from over-consumption. . . . Good butter is not unreasonably dangerous merely because, if such be the case, it deposits cholesterol in the arteries and leads to heart attacks; but bad butter, contaminated with poisonous fish oil, is unreasonably dangerous.
>
> [A] seller is not required to warn with respect to products, or ingredients in them, which are only dangerous, or potentially so, when consumed in excessive quantity, or over a long period of time, when the danger, or potentiality of danger, is generally known and recognized.

Restatement (Second) of Torts, §402A, Comments i & j. Just as there is no requirement that a grocer selling "good butter" warn his customers that it contains cholesterol and increases one's risk of heart disease if consumed in excess, there is no requirement that restaurateurs warn their customers of common ingredients or nutrients, such as cooking oils, that present no immediate danger (unlike allergens or toxins) but may increase health risks, if at all, only when consumed frequently and excessively.

Courts have applied the principles set forth in the Restatement to a variety of circumstances, including the sale of fast food, and declined to impose a duty to warn of the commonly known risks of excessive consumption. In Pelman v. McDonald's Corp., 237 F. Supp. 2d 512, 532 (S.D.N.Y. 2003), a New York federal court rejected the plaintiffs' effort to force McDonald's to warn of health risks associated with over-consumption of fast food, reasoning that "[i]t is well-known that fast food in general . . . contain[s] high levels of cholesterol, fat, salt, and sugar, and that such attributes are bad for one."[7] See also, e.g., Desatnik v. Lem Motlow, Prop., Inc., 1986 Ohio App. LEXIS 5240, No. 84 C.A. 104, at *6-7 (Oh. Ct. of App. Jan. 9, 1986) (citing Restatement (Second) of Torts, §402A, Comment j); Morris v. Adolph Coors Co., 735 S.W.2d 578 (Tex. Ct. App. 1987) (no duty to disclose when selling untainted beer, where over-consumption of the same product may impair judgment and motor skills).

There is good reason for the reluctance of tort law to intervene in this area. Decisions about what foods to eat and in what quantities are matters of consumer choice and individual responsibility. The average American eats approximately 1,000 meals each year, taking in nearly 70% of his or her calories from foods prepared at home, see FDA 6/2/06 Statement (Ex.

---

[7]    This Court may take judicial notice, as the Pelman court did, of facts that are commonly known, such as the fact that many types of fast food may contain high levels of fat. See Fed. R. Evid. 201(a) ("A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."); 31A C.J.S. Evidence § 10 (2006) ("Courts may properly take judicial notice of facts that may be regarded as forming part of the common knowledge of every person of ordinary understanding and intelligence."); 29 Am. Jur. 2d Evidence § 33 (2006) ("The law has long afforded judicial notice to a fact if it was a matter of common and general knowledge . . . ."); Washington Post v. Robinson, 935 F.2d 282, 291 (D.C. Cir. 1991) (taking judicial notice of existence of newspaper articles in D.C. area that publicized ongoing criminal investigation); In re Olson, 884 F.2d 1415, 1424 n.14 (D.C. Cir. 1989) (taking judicial notice that attorney's billing rate was reasonable).

5), and consumes scores, if not hundreds, of different types of food. Americans have a wide variety of sources of information available as to proper nutrition and diet, through newspapers, magazines, books, television and the internet. There is no need for tort law to interpose a duty to warn where ingredients or nutrients contained in particular foods consumed at particular meals pose a risk of harm, if at all, only if consumed in excessive quantities over an extended period of time. Tort law wisely reserves its remedies for situations where the ingredient or nutrient poses a risk of immediate harm and results in actual physical injury.

III.    CSPI's Implied Warranty Claim Should Be Dismissed Because Burger King's Food Meets The Standard Of Merchantability.

In order to be "merchantable," goods must merely be ordinary, and the food sold by Burger King easily meets that standard. Merchantable goods are those which, when compared to the other goods of their kind available in the marketplace, meet the basic expectations of consumers of those goods. The principal warranty in D.C. Code § 28:2-314(2) with regard to the sale of food or drink is that the goods are "fit for the ordinary purpose" for which they are used – that is, fit to be consumed. See U.C.C. § 2-314, Comment 5 (adopted by the District of Columbia, see Act of Dec. 30, 1963, 88 Pub. L. No. 243, 77 Stat. 630). Under D.C. law, whether a meal served at a restaurant meets this standard, and in turn whether the restaurant breached the implied warranty of merchantability, is determined based on the "reasonable expectations" of the consumer. A merchant is liable under this standard if it sells food that falls below the level of quality reasonably expected by the ordinary consumer, and that deficiency causes plaintiff injury. Hochberg v. O'Donnell's Restaurant, Inc., 272 A.2d 846, 848 (D.C. 1971); see also Standardized Civil Jury Instructions for the District of Columbia, §23.02[1]. Conversely, there is no breach of warranty where a plaintiff is injured by an ingredient or nutrient that "should reasonably be expected by the consumer to be in the food served to him." Hochberg, 272 A.2d at 848.

19

Where the food in question meets consumers' reasonable expectations, a plaintiff cannot establish breach of warranty. The law does not require that "goods shall be of first quality or even that they shall be as good as the average of goods of the sort." Brennan v. Shepherd Park Pharmacy, 138 A.2d 494, 495 (D.C. 1958). Furthermore, there is no barrier to this Court determining, as a matter of law, the reasonable expectations of consumers, particularly where they involve matters within the common knowledge of the general public. See, e.g., Pelman, 237 F. Supp. 2d at 532 (dismissing complaint and holding that it is well-known that fast food contains high levels of cholesterol, fat, salt and sugar).

Here, CSPI pleads no facts indicating that the food sold by Burger King falls short of the reasonable and ordinary expectations of consumers. CSPI summarily alleges that due to its trans fat content, "Burger King's foods are neither of fair average quality nor fit for human consumption." Complaint ¶ 41. However, as discussed above, cases involving an alleged breach of the implied warranty of merchantability in the context of food generally have focused on foreign substances or food that causes immediate ill effects. Nothing of that sort is alleged here. Furthermore, no cases under D.C. law have held that the implied warranty of merchantability is breached by the use of ingredients such as trans fat that may result in adverse health effects, if at all, only when consumed in significant quantities over an extended period. Indeed, CSPI's Complaint and sources confirm that the presence of trans fat in some foods is well within the expectations of reasonable consumers, as many foods contain trans fat, see, e.g., IOM Report (Ex. 6) at 4, and trans fat has long been used in quick-service restaurants, see Complaint ¶ 20. As Pelman recognized, also in the context of a motion to dismiss, "[i]t is well-known that fast food in general . . . contain[s] high levels of cholesterol, fat, salt, and sugar . . . ." 237 F. Supp. 2d at 532. Similarly, in Hoyte, Judge Robertson noted that "it might be appropriate for this court

to find, as a matter of law, that the consumption of fat – including trans fat – is indeed within the reasonable expectations of the consumers of fried chicken and French fries prepared in fast food kitchens," although he found it unnecessary to reach that issue because the plaintiff, like CSPI in this case, had failed to allege any cognizable injury. Hoyte, 2007 WL 1302590, at *2. Rather than state a claim that the food sold by Burger King did not meet the standard of merchantability imposed by law, CSPI effectively asserts that Burger King's food does not meet CSPI's idealized standard, which it now seeks to impose on the American food supply through litigation. In doing so, CSPI seeks to employ the doctrine of implied warranty to serve regulatory purposes for which it was never intended.

IV.    CSPI's Deception Claim Should Be Dismissed Because Burger King's Alleged Nondisclosure Does Not "Tend To Mislead" Consumers Into Believing That Its Foods Are Free Of Trans Fat Content.

The DCCPPA prohibits any person from "fail[ing] to state a material fact <u>if such failure tends to mislead</u>." D.C. Code § 28-3904(f) (2007) (emphasis added). Thus, mere nondisclosure of trans fat content is not sufficient to serve as the basis for a claim under the DCCPPA unless such nondisclosure tends to mislead consumers into believing that the food in question is actually trans fat free. However, it cannot be said that nondisclosure of trans fat content by Burger King would tend to mislead anyone into believing that the food served at Burger King is free of any trans fat, particularly when many types of fast food are commonly known to be high in fat. CSPI does not allege that Burger King claims that its food is free of trans fat, and, contrary to CSPI's position, the absence of disclosure cannot be converted into an implicit assurance to consumers that Burger King's food is trans fat free. The court in Hoyte was confronted with precisely the same theory and, although it did not need to resolve the issue given its dismissal of the case on other grounds, it made clear that this theory was likely to be rejected:

> The suggestion is that, by its silence, KFC misled plaintiffs into believing that its products did not contain harmful trans fat. This is a questionable premise at best . . . . Especially since, as plaintiff submits, consumers have a "growing awareness of trans fat and the need to avoid it." If consumers are increasingly aware of trans fat, where do they expect to find it if not in fast food restaurants?

Hoyte, 2007 WL 1302590, at *3 & n.6. Rather, when confronted with a restaurant's silence regarding trans fat content, any reasonable consumer would conclude merely that he or she does not know whether the food contains trans fat.

Moreover, any inference that consumers would be deceived into believing that Burger King food contains no trans fat is quickly dispelled by Burger King's own public disclosures of the trans fat content of its food, as relied upon by CSPI for Paragraph 25 of the Complaint. See BK Posters; BK Website.[8] Any customer curious as to whether particular Burger King menu items contain trans fat can readily resolve their uncertainty by reading the informational posters in Burger King's restaurants or consulting Burger King's website.

V.    Federal Law Preempts CSPI's Claims.

CSPI seeks injunctive relief mandating that Burger King ensure that immediately before any customer purchases a menu item containing trans fat, that customer receives a pre-purchase warning regarding the trans fat content of the food. Complaint, Prayer for Relief ¶ 2. In effect, CSPI would require Burger King to make a mandatory "expressed nutrient content claim" as that term is defined in 21 C.F.R. § 101.13(b)(1) (2007), and would limit the form and circumstances of that nutrient content claim to those that satisfy CSPI's criteria. However, as noted above, Burger King already discloses the trans fat content of its menu items, both on restaurant posters and its website. Burger King's disclosures are in full compliance with the FDA regulations, and

---

[8]    As discussed above at Footnote 2, the Court may consider these materials even on this motion to dismiss.

any District requirement (whether imposed by this lawsuit or otherwise) that constrains or limits the range of disclosure options available to Burger King under the FDA regulations would be preempted by federal law, both by the express preemption provision of Section 403A of the NLEA, 21 U.S.C. § 343-1(a)(5), and by the implied conflict preemption principles set forth in Geier v. American Honda Motor Co., 529 U.S. 861, 875, 882-85 (2000).

Restaurant food is expressly exempt from the labeling requirements of the NLEA, 21 U.S.C. §§ 343(q)(5)(A)(i) and (ii), 343(r)(5)(B), with the only exception arising when a restaurant affirmatively makes a claim that characterizes the level of a particular nutrient in a food, a so-called nutrient content claim (including as of January 1, 2006 those relating to trans fats). 21 U.S.C. §§ 343(r)(1) and (r)(5)(B); FDA Final Rule, 68 Fed. Reg. at 41465. The FDA has made the policy judgment that, when a restaurant makes nutrient content claims, it should be granted flexibility in determining the methods by which the required nutritional information is communicated to the consumer. 21 C.F.R. § 101.10 directly addresses this situation and provides that when a nutritional content claim is made, the restaurant shall make available to the customer "upon request" nutritional labeling of the type otherwise required only for packaged food, and that such labeling "may be in various forms, including those provided in § 101.45 and other reasonable means." Under 21 C.F.R. § 101.45, a restaurant may communicate the nutritional information by means of restaurant posters of the type utilized by Burger King and may supplement this method with website information of the type provided by Burger King. Against this regulatory backdrop, any District requirement that nutritional information must be provided to all consumers, even absent request, or must be communicated via a specific means such as tray liners or menu boards would plainly be preempted.

There are two principal substantive provisions in the NLEA, 21 U.S.C. § 343(q) and

21 U.S.C. § 343(r), each of which has its own corresponding express preemption provision.

Section 343(q), which sets forth the general nutritional labeling requirements for packaged food,

does not apply to restaurant food. 21 U.S.C. § 343(q)(5)(A)(i) and (ii) (2007). Consequently,

restaurant food is excluded from the operation of 21 U.S.C. § 343-1(a)(4), which otherwise

broadly prohibits "any [state] requirement for nutritional labeling of food that is not identical to

the requirement of section [343(q)] . . . ."

In contrast, Section 343(r) contains only a partial exemption for restaurant food.

21 U.S.C. § 343(r)(5)(B) (2007). Restaurant food is subject to certain of the requirements of

Section 343(r) relating to nutrient content claims. These requirements are implemented by the

FDA regulations set forth in 21 C.F.R. §§ 101.10, 101.9 and 101.45. The express preemption

provision relating to Section 343(r) is 21 U.S.C. § 343-1(a)(5), which prohibits a state from

imposing

> any requirement respecting any claim of the type described in
> section [343(r)(1) of this title], made in the label or labeling of
> food that is not identical to the requirement of section [343(r) of
> this title,] except a requirement respecting a claim made in the
> label or labeling of food which is exempt under section
> [343(r)(5)(B) of this title].

21 U.S.C. § 343-1(a)(5) (2007).

Since restaurant food is only partially exempt from federal regulation under Section

343(r)(B)(5), any state requirement for nutritional content labeling of restaurant food that is not

identical to the requirements of 21 C.F.R. § 101.10, 101.9 and 101.45 is expressly preempted.[9]

---

[9]    There can be no real doubt but that the preemptive reach of Section 343-1(a)(5) extends to
state tort claims as well as to state statutes and regulations. The Supreme Court indicated in
Medtronic, Inc. v. Lohr, 518 U.S. 470, 509 (1996) (opinion of Justice O'Connor for four
justices), 518 U.S. at 503-04 (concurring opinion of Justice Breyer), that the term

See <u>Reyes v. McDonald's Corp.</u>, Nos. 06 C 1604, 06 C 2813, 2006 WL 3253579, at *4-5 (N.D.

Ill. Nov. 8, 2006) (construing Section 343-1(a)(5) and finding that state law would be preempted

unless it is identical to the corresponding federal law); <u>Vermont Pure Holdings, Ltd. v. Nestle</u>

<u>Waters North America</u>, No. Civ.A.03-11465 DPW, 2006 WL 839486, at *5 (D. Mass. Mar. 28,

2006) (same reasoning with regard to Section 343-1(a)(1)).

Here, the relief sought by CSPI is clearly "not identical" to the federal regulatory

requirements of 21 C.F.R. § 101.10 and § 101.45.  Section 101.10 requires a restaurant to

provide nutritional labeling information to a consumer only "upon request."  CSPI seeks a

mandatory injunction requiring Burger King to provide such information to all consumers prior

to purchase, even in the absence of any consumer request.  Section 101.45 affords a restaurant a

broad range of options for communicating nutritional information including posters

supplemented by websites.  CSPI would restrict those options only to pre-purchase methods

designed to reach every customer, presumably such as food container labeling or tray liners.

---

"requirement" as used in another section of the Food, Drug and Cosmetic Act, 21 U.S.C.
§ 360(k)(a), encompasses state tort claims.  <u>See</u> also <u>Papike v. Tambrands, Inc.</u>, 107 F.3d
737, 741 (9th Cir. 1997).  Moreover, the FDA has officially interpreted the term
"requirement" as used in Section 343-1(a)(4) to preempt claims arising under state tort law.
FDA Final Rule, 68 Fed. Reg. at 41498.  This interpretation doubtless applies to preemption
under Section 343-1(a)(5) as well, since there can be no meaningful distinction between the
two subsections in this regard.  Such agency interpretations of the preemptive scope of its
governing statute are accorded great weight by the courts.  <u>See</u>, <u>e.g.</u>, <u>Indus. Truck Ass'n,</u>
<u>Inc. v. Henry</u>, 125 F.3d 1305, 1311 (9th Cir. 1997); <u>Colacicco v. Apotex, Inc.</u>, 432 F. Supp.
2d 514, 526 (E.D. Pa. 2006); <u>Nat'l Home Equity Mortgage Ass'n v. Office of Thrift</u>
<u>Supervision</u>, 271 F. Supp. 2d 264, 272 (D.D.C. 2003).  Indeed, CSPI's injunctive relief
claims under the DCCPPA sufficiently resemble direct state regulation that they would
likely be preempted even if ordinary common law tort claims were not.

Indeed, express preemption aside, CSPI's proposed injunctive relief would be precluded by the implied conflict preemption principles of <u>Geier v. American Honda Motor Co.</u>, <u>supra</u>.[10] In <u>Geier</u>, the Supreme Court held that federal law preempted a product liability claim under D.C. law in which the plaintiff contended that a car manufacturer should have provided a driver's side airbag. The Court found that federal standards "deliberately provided the manufacturer with a range of choices among different passive restraint devices," and that by seeking to restrict that range of choices, plaintiff's tort claim conflicted with the federal standards. <u>Id.</u> at 875, 881. Similarly, when restaurants make nutrient content claims in the labeling of their food, federal law provides them with a range of options for making that information available to customers. CSPI's effort to restrict those options impermissibly conflicts with federal law and therefore is preempted.

---

[10]   Implied conflict preemption may apply even if the statute in question contains an express preemption clause. <u>Freightliner Corp. v. Myrick</u>, 514 U.S. 280, 288-289 (1995).

CONCLUSION

For the foregoing reasons, the Complaint should be dismissed in its entirety, with

prejudice.

Dated: New York, New York            Respectfully submitted,
      July 20, 2007

                                      DEBEVOISE & PLIMPTON LLP

                                      /s/ Roger E. Podesta
                                      By: Roger E. Podesta
                                        (admitted pro hac vice)
                                        Erich O. Grosz
                                        (admitted pro hac vice)

                                      919 Third Avenue
                                      New York, N.Y. 10022
                                      Tel: (212) 909-6000
                                      Fax: (212) 909-6836

                                      /s/ Ada Fernandez Johnson
                                      By: Ada Fernandez Johnson
                                      (Bar No. 463296)

                                      555 12th St., N.W.
                                      Suite 1100E
                                      Washington, D.C. 20004
                                      Tel: (202) 383-8000
                                      Fax: (202) 383-8118

                                    Attorneys for Defendant Burger King Corporation

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **Center for Science in the Public Interest**<br><br>            Plaintiff,<br><br>   v.<br><br>**Burger King Corporation**<br><br>            Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   Civil Action No. 1:07-cv-01092<br>   (RJL)<br><br>   Judge Richard J. Leon |

**[PROPOSED] ORDER**

Defendant Burger King Corporation's Motion to Dismiss is granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and the Complaint is dismissed with prejudice.

SO ORDERED.

Dated: _____, 2007

_____
THE HONORABLE RICHARD J. LEON
UNITED STATES DISTRICT JUDGE