IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **Center for Science in the Public Interest,**<br><br>　　Plaintiff,<br>v.<br><br>**Burger King Corporation,**<br><br>　　Defendant. | Civil Action No. 07-CV-1092 (RJL)<br><br>Judge Richard J. Leon |

PLAINTIFF'S STATEMENT OF POINTS AND AUTHORITIES
IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

INTRODUCTION

Plaintiff Center for Science in the Public Interest ("CSPI") brought this action in the Superior Court for the District of Columbia based on Burger King Corporation's ("Burger King") practice of selling food with substantial levels of trans fat and failing to reasonably warn consumers. On June 18, 2007, Defendant removed the case to this Court; CSPI moved to remand on July 18, 2007. Two days later, Defendant moved to dismiss.

CSPI contests Burger King's removal of this action from its proper forum, only to move to dismiss on jurisdictional grounds. Nonetheless, CSPI does not challenge Defendant's assertion that the District Court lacks jurisdiction over this action because the Superior Court of the District of Columbia is the appropriate forum.[1] Accordingly, CSPI will reserve its substantive arguments about the merits of its claims until this matter is properly before the Superior Court.

BACKGROUND

---

[1] Many of the facts and arguments raised in CSPI's Motion to Remand appear in this brief. CSPI felt it appropriate to reiterate these points for the sake of completeness.

A.     **The history of CSPI and this litigation**

Since 1971, CSPI has been a strong advocate for nutrition and health, food safety, alcohol policy, and sound science. Its award-winning newsletter, Nutrition Action Healthletter, has some 900,000 subscribers in the United States and Canada, is the largest-circulation health newsletter in North America.

CSPI's accomplishments include leading the efforts to win passage of laws that require Nutrition Facts on packaged foods (and, later, to include trans fat on those labels), define the term "organic" for foods, and put warning notices on alcoholic beverages. CSPI also helped New York City adopt the nation's first ordinances to ban trans fat from restaurants and list calorie information on menus and menu boards. In 2007, the FDA Commissioner awarded CSPI the agency's highest honor, the Harvey W. Wiley Special Citation.

CSPI filed this representative action against Burger King on May 16, 2007 in the Superior Court for the District of Columbia. In this case, as with much of its other advocacy efforts, CSPI strives to protect the public from the unwitting consumption of dangerous substances. In this case, the presence of trans fat in Burger King's food, and the inadequate disclosure thereof, violate D.C. Consumer Protection Procedures Act (DCCPPA), D.C. Code § 28-3904(f).

B.     **The presence of trans fat in food products has severe physiologic consequences – including death.**

Trans fat is the artificial product of heating liquid vegetable oil in the presence of metal catalysts and hydrogen.[2] This process, called partial hydrogenation, changes the molecular structure of the oil into fats that are solid or semi-solid at room temperature, and liquid when

---

[2] There also exists a small amount of naturally occurring trans fat in the U.S. food supply, mostly from meat and dairy.

heated. The resulting oil product is reputed to have a longer shelf life and fry life than other oils (though that presumption is frequently not the case).

Scientific research shows that trans fat is the most harmful fat in the food supply. It causes heart attacks, leads to coronary heart disease, spikes LDL ("bad") cholesterol and decreases HDL ("good") cholesterol, and increases the risk of diabetes.[3] A Harvard School of Public Health report estimates that eliminating trans fats from diets could prevent 30,000 to 100,000 deaths in the U.S. each year. More recently, Harvard researchers determined that the near-elimination of industrially produced trans fat could avert between 72,000 and 228,000 deaths per year in the United States. Trans fat serves no functional purpose in the human diet, as confirmed by the National Academy of Science's Institute of Medicine recommendation that individuals consume as little trans fat as possible.

C.  **Burger King appears more concerned about its bottom line than the health and safety of its customers.**

Burger King has not eliminated trans fat from its products. Moreover, much like a used car dealer that fails to mention a car for sale has a defective engine, or like a real estate agency that fails to disclose a foundational defect in a home for purchase, Burger King provides no warning as to the dangers of an ingredient in its food products – trans fat. While Burger King appears to admit the high amount of trans fat in each product, it obscures this information from customers by placing the information in remote locations (e.g. a poster hung beyond the point of purchase, a website unavailable to customers at the point of purchase). Furthermore, no information is available where 70% of Burger King business that occurs – at drive-thru windows.

---

[3] *See, e.g., Food Chemical News,* 3 May 2004, p. 27.

Throughout its Motion to Dismiss, Burger King repeats the same mantra: people should know fast food is high in fat. Burger King's reduction of the argument to whether the public should know that its food is fattening sidesteps the basis of CSPI's Complaint. CSPI brought this action because Burger King customers cannot tell whether its food products contain trans fat. For example, a customer may know that an order of Burger King French fries is fattening. However, the customer cannot know, unless Burger King discloses the fact, that an order of Burger King French fries contains nearly *four times* as much trans fat than is safe to consume in an entire day.[4] The only way a consumer can know whether his or her food purchase contains trans fat is if the seller discloses that fact.

Burger King claims that it has taken adequate measures to reduce the presence of trans fat in its products. Less than two months ago, well after the commencement of this litigation, Burger King announced that it will attempt to phase trans fat out of its cooking oil – not out of its food products – over a nebulous amount of time.[5] Unlike competitors such as Kentucky Fried Chicken, however, Burger King's products will still contain unacceptable levels of trans fat when the purported phase-out is complete. This is because Burger King's food products are par-fried in trans fat before they arrive at its restaurants. *But cf. Hoyte v. Yum! Brands, Inc.,* 2007 WL 1302590 (D.D.C. 2007) (Defendant agreed to remove trans fat from its food products and not just its cooking oil). Commercial food manufacturers and restaurants have utilized trans fat because it is reputed to have a longer shelf life than non-hydrogenated alternatives, which means

---

[4] The Dietary Guidelines Advisory Committee, the American Heart Association, and various other health authorities recommend that people consume no more than two grams of trans fat per day. (Need cite?)

[5] Press Release, Burger King®, Burger King Corp. Announces Nationwide Rollout of Trans Fat Free Oil, *at* http://www.Burger King.com/companyinfo/newsreleases.aspx (July 6, 2007).

a lower cost to them. However, as Walter Willett, leading epidemiologist from the Harvard School of Public Health, recently informed food industry professionals: "Human life is more important than shelf life … Food scientists are capable of creating products that are free of trans fat and still have shelf life."[6] In step with Willett's position, every Top 10 restaurant chain besides Burger King (McDonald's, Starbucks, Pizza Hut, Kentucky Fried Chicken, Subway, Applebee's Neighborhood Grill & Bar, Wendy's, Taco Bell and Domino's Pizza) ceased selling food products containing trans fat, or, before the initiation of this litigation, commenced switching to trans fat-free products. Burger King, however, continues to use high levels of trans fat in its food.[7]

Defendant owns and operates seven stores in the District of Columbia. It could place adequate warnings in these locations at a minimal cost. Burger King claims that "[t]wo trans fat free oil blends have passed the company's rigorous operational, supply, and consumer criteria," and that tests were completed "on over a dozen core items."[8] If this statement is true, Burger King could utilize these trans fat-free blends at a minimal cost in its seven D.C. restaurants.

Instead, Burger King refuses to stop using trans fat. Burger King refuses to alert customers as to the danger of its products, lest it lose business. Burger King refuses to ensure a significant reduction in the trans fat content in its food. Apparently, Burger King's sole concern is its bottom line, and not the concern for its customers' health and safety.

**ARGUMENT**

---

[6] Daniells, Stephen, Trans-fats Should Be Banned – Expert at IFT, *at* http://www.nutraingredients-usa.com/news/printNewsBis.asp?id=78668 (Aug. 1, 2007).

[7] Burger King has switched to trans fat-free cooking oil in its New York City restaurants, as mandated by a New York City ordinance.

[8] Press Release, Burger King®, Burger King Corp. Announces Nationwide Rollout of Trans Fat Free Oil, *at* http://www.Burger King.com/companyinfo/newsreleases.aspx (July 6, 2007).

CSPI filed this action in the Superior Court for the District of Columbia. D.C. law indeed supports CSPI's implied warranty of merchantability claim. *See, e.g., Cushing v. Rodman*, 65 App. D.C. 258 (D.C. Court of Appeals 1936); *Hochberg v. O'Donnell's Restaurant, Inc.*, 272 A.2d 846 (D.C. Court of Appeals 1971). Furthermore, D.C. law enables CSPI to seek to remedy Burger King's deceptive practices under the D.C. Consumer Protection Procedures Act.

CSPI does not dispute Burger King's argument against the Court's jurisdiction. Rather, CSPI is mindful that, "[w]hen it appears that a district court lacks subject matter jurisdiction over a case that has been removed from a state court, the district court **must** remand the case." *Republic of Venezuela v. Phillip Morris, Inc.*, 287 F.3d 192, 196 (D.D.C. 2002). *Accord* 28 U.S.C. 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."); *see also, e.g., Randolph v. Ing Life Ins. & Annuity Co.*, 486 F. Supp. 2d 1, 10-11 (D.D.C. 2007)   Further, CSPI acknowledges that precedent in Court has determined that the Court does not have jurisdiction over cases brought by representational plaintiffs, on the ground that such plaintiffs do not have Article III injury in fact. *See, e.g. Randolph, supra*, 486 F.Supp.2d at 10-11; *Williams v. Purdue Pharma Co.*, 297 F.Supp.2d 171, 177 (D.D.C. 2003).

Under prior decisions of the Court, however, the Court may not dismiss this action with prejudice in such a circumstance. Instead, it must remand the case pursuant to 28 U.S.C. 1447(c) and allow the Superior Court to decide this matter. *See, e.g. Randolph, supra*, 486 F.Supp.2d at 11 ("Cognizant of the fact that the Superior Court for the District of Columbia may also conclude that Plaintiffs lack the requisite standing to pursue their claims in that forum, the Court shall leave such a decision to the discretion of the Superior Court, and remand this case pursuant to 28 U.S.C. § 1447(c).").

## CONCLUSION

Plaintiff respectfully requests that the Court remand this case to the Superior Court for the District of Columbia, and deny the Motion to Dismiss as moot.

        Respectfully submitted,

| | |
|---|---|
| Of Counsel:<br>**Center for Science in the Public Interest**<br>Stephen Gardner, Director of Litigation<br>(D.C. Bar No. 500296)<br>Kate Campbell, Staff Attorney<br>5646 Milton St., Ste. 211<br>Dallas, Texas 75206<br>Telephone: 214-827-2774<br>Facsimile: 214-827-2787 | **CHAVEZ & GERTLER LLP**<br>Steven N. Berk<br>(D.C. Bar No. 432874)<br>1225 Fifteenth Street NW<br>Washington, D.C. 20005<br>Telephone: 202-232-7550<br>Facsimile: 202-232-7556 |
| Of Counsel:<br>**CHAVEZ & GERTLER LLP**<br>Mark A. Chavez<br>Nance F. Becker<br>Daniel Swerdlin<br>42 Miller Avenue<br>Mill Valley, CA 94941<br>Telephone: 415-381-5599<br>Facsimile:  415-381-5572 | Attorneys for Center for Science in the Public Interest<br>By:<br><br>_____/s/_____<br>Steven N. Berk |

### CERTIFICATE OF SERVICE

A copy of the foregoing was served August 17, 2007, using the Court's CM/ECF system, on counsel for defendant.

        _____/s/_____
        Steven N. Berk